UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
CANAL+ IMAGE UK Ltd.,                          :

              Plaintiff,                          :

        -against-                          :

                                   Case No. 10 CV 1536

STEVEN LUTVAK and ROBERT L.                    :
FREEDMAN,                                                  Holwell, J.
                                               :
              Defendants.

                                  :

                                  :

                                  :
--------------------------------------------------------X

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

                                         LOEB & LOEB LLP
                                         Barry I. Slotnick (BS-9796)
                                         Jonathan Neil Strauss (JS-1090)
                                         Shelly Elimelekh (SE-0597)
                                         345 Park Avenue
                                         New York, New York 10154-1895
                                         (212) 407-4000

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES .................................................................................. iii

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ............................................................................................................ 2

I.   PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS SHOULD BE
     DISMISSED BECAUSE THERE IS NO SUBSTANTIAL SIMILARITY
     BETWEEN THE MUSICAL AND THE PROTECTIBLE ELEMENTS OF
     PLAINTIFF'S WORK ...................................................................................... 2

     A.   Plaintiff Concedes That There Is No Substantial Similarity Between
          Plaintiff's Work And The Script For, Or Musical Elements Of,
          Defendants' Musical ............................................................................... 2

     B.   Plaintiff's Irrelevant Allegations Concerning "Actual Copying"
          Should Be Disregarded ........................................................................... 4

     C.   The "Expert" Affidavit And Other Evidence Submitted By Plaintiff
          Is Improper, And Should Be Disregarded For Purposes Of This
          Motion ..................................................................................................... 5

          1.   Expert Testimony is Inappropriate on the Issue of
               Substantial Similarity .................................................................. 5

          2.   Comments by Broadway Producers Are Irrelevant to
               Substantial Similarity .................................................................. 7

     D.   The Concept Of One Actor Playing Multiple Roles Is Not
          Protectible, And Does Not Give Rise To A Claim Of Infringement ...... 8

          1.   Plaintiff Does Not, and Cannot, Cite Any Authority
               Refuting That This Common Theatrical Device is Not
               Protectible .................................................................................... 8

          2.   Plaintiff's Conclusory Assertions Concerning the
               "Centrality" of This Unprotectible Theatrical Device Are
               Irrelevant .................................................................................... 11

          3.   Plaintiff Ignores That, in Assessing Substantial Similarity,
               the Court Must Remove Non-Protectible Elements From
               Consideration .............................................................................. 12

## TABLE OF CONTENTS

PAGE

II.   PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST ALSO BE
      DISMISSED ................................................................................................ 14

      A.   Plaintiff Concedes that the Agreement Does Not Restrict
           Defendants From Using Noncopyrightable Material That is Also
           Contained in *Kind Hearts* .......................................................... 14

      B.   Plaintiff's Breach of Contract Claim is Preempted by the Copyright
           Act ................................................................................................ 14

CONCLUSION ................................................................................................ 15

# TABLE OF AUTHORITIES

CASES

PAGE(S)

*A Slice of Pie Prods., LLC v. Wayans Bros. Entm't,*
    487 F. Supp. 2d 41 (D. Conn. 2007).................................................................... 8-10, 11

*Aaron Basha Corp. v. Felix B. Vollman, Inc.,*
    88 F. Supp. 2d 226 (S.D.N.Y. 2000)..............................................................................8

*Abend Revocable Trust v. Spielberg,*
    No. 08 Civ. 7810(LTS)(JCF), 2010 WL 3701343 (S.D.N.Y. Sept. 21, 2010) .................5, 6, 7

*Arica Inst., Inc. v. Palmer,*
    970 F.2d 1067 (2d Cir. 1992)......................................................................................13

*Banxcorp v. Costco Wholesale Corp.,*
    No. 09-CV-1783, 2010 WL 2802153 (S.D.N.Y. Jul. 14, 2010)............................................15

*Benay v. Warner Bros. Entm't, Inc.,*
    607 F.3d 620 (9th Cir. 2010) .....................................................................................11

*Branch v. Ogilvy & Mather, Inc.,*
    765 F. Supp. 819 (S.D.N.Y. 1990) .................................................................................6

*Burgess v. Chase-Riboud,*
    765 F. Supp. 233 (E.D. Pa. 1991) ................................................................................14

*Burroughs v. Metro-Goldwyn-Mayer, Inc.,*
    683 F.2d 610 (2d Cir. 1982).......................................................................................14

*Chappell & Co. v. Fields,*
    210 F. 864 (2d Cir. 1914)..........................................................................................10

*Crane v. Poetic Prods. Ltd.,*
    593 F. Supp. 2d 585 (S.D.N.Y. 2009)...............................................................................7

*Davis v. Am. Broad. Cos.,*
    No. 1:10-CV-167, 2010 WL 2998476 (W.D. Mich. July 28 2010)...........................................3

*Davis v. United Artists, Inc.*
    547 F. Supp. 722 (S.D.N.Y. 1982) .................................................................................6

*Denker v. Uhry,*
    820 F. Supp. 722 (S.D.N.Y. 1992) .................................................................................6

**PAGE(S)**

*Flaherty v. Filardi,*
    No. 03 Civ. 2167 (LTS) (HBP), 2007 WL 2734663 (S.D.N.Y. Sep. 19, 2007) ....................... 8

*Flaherty v. Filardi,*
    No. 03 Civ. 2167(LTS)(HBP), 2009 WL 749570 (S.D.N.Y. March 20, 2009) ....................... 5

*Green v. Lindsey,*
    885 F. Supp. 469 (S.D.N.Y. 1992), *aff'd*, 9 F.3d 1537 (2d Cir. 1993) ................................. 4-5

*Harold Lloyd Corp. v. Witwer,*
    65 F.2d 1 (9th Cir. 1933) ............................................................................................. 10

*Hogan v. DC Comics,*
    48 F. Supp. 2d 298 (S.D.N.Y. 1999).......................................................................... 3, 11

*Knitwaves, Inc. v. Lollytogs Ltd.,*
    71 F.3d 996 (2d Cir. 1995).................................................................................... 12-13

*Lapine v. Seinfeld,*
    375 Fed. Appx. 81 (2d Cir. 2010) ................................................................................ 12

*Laureyssens v. Idea Group, Inc.,*
    964 F.2d 131 (2d Cir. 1992)........................................................................................... 6

*Nichols v. Universal Pictures Corp.,*
    45 F.2d 119 .................................................................................................................. 6

*RDF Media Ltd. v. Fox Broad. Co.,*
    372 F. Supp. 2d 556 (C.D. Cal. 2005) ........................................................................... 7

*Reyher v. Children's Television Workshop,*
    533 F.2d 87 ................................................................................................................ 11

*Rush v. Oursler,*
    39 F.2d 468 (S.D.N.Y. 1930)...................................................................................... 10

*Scarves by Vera, Inc. v. United Merchants & Mfrs., Inc.,*
    173 F. Supp. 625 (S.D.N.Y. 1959) ................................................................................ 5

*Seltzer v. Sunbrock,*
    22 F. Supp. 621 (S.D. Cal. 1938)................................................................................ 10

*Sharp v. Patterson,*
    03 Civ. 8772, 2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004) ................................................. 15

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
    81 F.2d 49 (2d Cir. 1936) (Pl. Br. at 16)....................................................................... 14

**PAGE(S)**

*Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.,*
    562 F.2d 1157 (9th Cir. 1977) .................................................................4

*Supreme Records, Inc. v. Decca Records, Inc.,*
    90 F. Supp. 904 (S.D. Cal. 1950).............................................................10

*Survivor Prods. v. Fox Broad. Co.,*
    No. CV01-3234 LGB (SHX), 2001 WL 35829267 (C.D. Cal. June 12, 2001).........................7

*United States v. Locascio,*
    6 F.3d 924 (2d Cir. 1993)..................................................................6-7

*Walker v. Time Life Films, Inc.,*
    615 F. Supp. 430 (S.D.N.Y. 1985) ........................................................ 11-12

*Walker v. Time Life Films, Inc.,*
    784 F.2d 44 (2d Cir. 1986)...............................................................4, 6, 14

*Warner Bros. Inc. v. Am. Broad. Cos.,*
    720 F.2d 231 (2d Cir. 1983)................................................................3, 4, 5

*Williams v. Crichton,*
    84 F.3d 581 (2d Cir. 1996)..................................................................11

*Willis v. Home Box Office,*
    No. 00 Civ. 2500 (JSM), 2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd,* 57 Fed
    App'x 902 (2d Cir. 2003).................................................................9, 10

**OTHER AUTHORITIES**

4 Nimmer, *Nimmer on Copyright* § 13.03[A][1] (Matthew Bender, Rev. Ed. 2006)...................13

4 Nimmer, *Nimmer on Copyright* § 13.03[B][1][b] (Matthew Bender, Rev. Ed. 2006) .............5, 7

4 Nimmer, *Nimmer on Copyright* § 13.03 [B][2] (Matthew Bender, Rev. Ed. 2006)............. 13-14

4 *Nimmer on Copyright* § 13.03[D] (Matthew Bender, Rev. Ed. 2006)...........................4

Michael Newton, *Kind Hearts and Coronets* (British Film Institute, 2003) ...................12

Defendants Steven Lutvak and Robert L. Freedman (collectively, "Defendants") respectfully submit this reply memorandum of law in further support of their motion for an order dismissing the Complaint of plaintiff Canal+ Image UK Ltd. ("Plaintiff") for failure to state a cognizable claim of relief, or, in the alternative, for summary judgment.

## PRELIMINARY STATEMENT

In their opening brief, Defendants demonstrated that Plaintiff has no right or ability to prevent Defendants from creating a theatrical adaptation of the public domain novel *Israel Rank: The Autobiography of a Criminal* ("*Israel Rank*" or the "Novel"), upon which Plaintiff's film *Kind Hearts and Coronets* ("*Kind Hearts*" or the "Film") is also based. Defendants further demonstrated that a copyright infringement claim must be dismissed where, based on a review of the works in question, there is no substantial similarity between the Defendants' work and the protectible elements of the Plaintiff's. Presenting copies of the works in question, including the final script of Defendants' yet-to-be produced musical *A Gentleman's Guide to Love and Murder* ("*Gentleman's Guide*" or the "Musical") and a CD containing the musical elements from *Gentleman's Guide*, Defendants showed that there is no protectible similarity between *Gentleman's Guide* and *Kind Hearts*, and that any similarities that may exist derive from the fact that both works are adaptations of the same public domain Novel, over which Plaintiff has no ownership interest.

Plaintiff does not dispute this showing. Plaintiff abandons any claim that the Musical, as written, infringes on any protectible aspect of *Kind Hearts*. Instead, the only allegedly "infringing" element of *Gentleman's Guide* that Plaintiffs identify is the contemplation – mentioned nowhere in the script itself – that one actor will play multiple roles. But Plaintiff fails to cite any cases refuting that such a concept is the essence of an unprotectible idea. Instead, Plaintiff submits "expert testimony" to try to fill this gap, ignoring well-settled law that expert testimony is irrelevant and improper on the issue of "substantial similarity." Because Plaintiff fails to show any legally-

1

cognizable similarity between *Gentleman's Guide* and *Kind Hearts*, its copyright infringement claim must be dismissed.

Plaintiff's breach of contract claim fails for similar reasons. Plaintiff concedes that the agreement between the parties only precludes Defendants from utilizing protectible elements of the Film that are actually owned by Plaintiffs. Because Plaintiff has not identified any such elements that are incorporated into Defendants' Musical, there is no breach of contract as a matter of law. And because Plaintiff's contract claims are duplicative of their copyright infringement claims, the breach of contract claims are preempted by the Copyright Act.

## ARGUMENT

I. **PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS SHOULD BE DISMISSED BECAUSE THERE IS NO SUBSTANTIAL SIMILARITY BETWEEN THE MUSICAL AND THE PROTECTIBLE ELEMENTS OF PLAINTIFF'S WORK**

### A. Plaintiff Concedes That There Is No Substantial Similarity Between Plaintiff's Work And The Script For, Or Musical Elements Of, Defendants' Musical

A copyright infringement claim must be dismissed where there is no substantial similarity between a defendant's work and the <u>protectible</u> elements of the plaintiff's work. As explained in Defendants' moving brief, elements from the public domain novel *Israel Rank* that are incorporated into *Gentleman's Guide*, as well as ideas and *scènes à faire*, are not protectible, and cannot establish copyright infringement. (Def. Br. at 10-18, 21).[1] Providing a detailed comparison of the works at issue, Defendants showed that any purported similarities derive directly from the public domain Novel or other unprotectible material, and that there are no protectible similarities between the total concept and feel, theme, characters, plot, sequence, pace and setting of *Gentleman's Guide* and

---

[1] References to "Def. Br." are to the July 2, 2010 Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint.

*Kind Hearts.* (Def. Br. at 3-9, 21-26).[2]  Accordingly, Plaintiff's infringement claims must be dismissed as a matter of law.[3]

   <u>Plaintiff does not dispute this showing.</u>  Plaintiff does not deny that Defendants are free to base their musical on the public domain novel *Israel Rank*, or that any similarities deriving from the fact that both works are based on *Israel Rank* cannot give rise to copyright infringement.  Nor does Plaintiff point to a single protectible similarity between its Film and the *Gentleman's Guide* script or musical elements.  In a single footnote (Pl. Br. at 7 n. 4)[4], Plaintiff asserts only that the protagonist has a "Latin name" in each of the two works, and that the songs and structure of *Gentleman's Guide* are similar to those in earlier scripts for the Musical.  Plainly, the allegation that both protagonists have "Latin" names cannot give rise to copyright liability.  *See, e.g., Hogan v. DC Comics*, 48 F. Supp. 2d 298, 311-12 (S.D.N.Y. 1999) (no substantial similarity between two works, both having a protagonist named Nicholas Gaunt who was half-vampire and half-human); *Davis v. Am. Broad. Cos.*, No. 1:10-CV-167, 2010 WL 2998476, at *10 (W.D. Mich. July 28 2010) (no infringement where characters were "Ely Stone" and "Eli Stone," respectively).  And Plaintiff's claim that *Gentleman's Guide* is similar to earlier drafts <u>of the Musical</u> certainly does not establish that *Gentleman's Guide* is substantially similar to Plaintiff's Film.

   The <u>only</u> purported similarity is not mentioned anywhere in the script for *Gentleman's Guide* – the concept of multiple roles being played by a single actor. (Pl. Br. at 7-22).  Accordingly,

---

[2] Plaintiff accuses Defendants of "itemiz[ing] the dissimilarities" between the works (Pl. Br. at 19). But the Second Circuit has held that "numerous differences tend to undercut substantial similarity". *Warner Bros. Inc. v. Am. Broad. Cos.*, 720 F.2d 231, 241 (2d Cir. 1983).

[3] In the face of well-settled Second Circuit law that a court should dismiss copyright infringement claims if the similarities concern only nonprotectible elements (Def. Br. at 11), Plaintiff cite to inapposite Ninth Circuit authority discussing that Circuit's "extrinsic" and "intrinsic" tests for copyright infringement (Pl. Br. at 7) (quoting *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990), which are wholly irrelevant to the Second Circuit analysis.

[4] References to "Pl. Br." are to the September 23, 2010 Memorandum of Plaintiff Canal+ Image (UK) Ltd. in Opposition to Defendants' Motion to Dismiss the Complaint.

the <u>only</u> issues are whether Plaintiff has a protectible interest in the concept of one actor playing multiple roles and, if one actor were to portray multiple roles in *Gentleman's Guide*, it would render the work as a whole substantially similar to the protectible elements of *Kind Hearts*.

**B.  Plaintiff's Irrelevant Allegations Concerning "Actual Copying" Should Be Disregarded**

The second element of a copyright infringement claim – copying of constituent elements that are original – itself has two elements:  (i) actual copying, and (ii) improper appropriation of copyrightable material, *i.e.* that the copying in question is *illegal* "because a substantial similarity exists between the defendant's work and the <u>protectible elements</u> of the plaintiff's." (Def. Br. at 10) (citations omitted); *see also, e.g., Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir. 1986); *Warner Bros. Inc*, 720 F.2d 231.

In an artificial effort to buttress its arguments, Plaintiff refers to principles applicable only to "actual copying", and falsely suggests that these principles somehow support claims of substantial similarity between the works' protectible elements.  Plaintiff cites *Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977) for the proposition that "access to the film . . . increases the likelihood of substantial similarity."  (Pl. Br. at 17).  But *Sid & Marty Krofft* was discussing what is known in the Ninth Circuit as the "Inverse Ratio Rule," 562 F.2d at 1172, which has been expressly <u>rejected</u> in the Second Circuit.  *See, e.g.,* 4 Nimmer, *Nimmer on Copyright* § 13.03[D], at 13-91 (Matthew Bender, Rev. Ed. 2006) ("The flawed proposition that powerful proof of access can substitute for demonstration of the requisite degree of substantial similarity is sometimes labeled the 'Inverse Ratio Rule.' . . .  [I]t is completely rejected by the Second Circuit . . . .") (citing *Arc Music Corp. v. Lee*, 296 F.2d 186 (2d Cir. 1961)); *Green v. Lindsey*, 885 F. Supp. 469, 480 (S.D.N.Y. 1992) ("[T]he inverse-ratio rule has been rejected by the Second Circuit and subsequently [after *Sid & Marty Krofft*] criticized by the Ninth."), *aff'd*, 9 F.3d 1537 (2d Cir. 1993).  Moreover, even if the Inverse Ratio Rule applied in the Second Circuit, it "is

4

irrelevant here, as it is applied only in the determination of whether there was actual copying," and not in connection with the determination of whether actionable substantial similarity exists. *Abend Revocable Trust v. Spielberg*, No. 08 Civ. 7810(LTS)(JCF), 2010 WL 3701343, at *3 n. 4 (S.D.N.Y. Sept. 21, 2010); *Green*, 885 F. Supp. at 480 (same).

Plaintiff also argues that revisions from earlier versions of Defendants' work are "itself evidence of copying." (Pl. Br. at 19 n.7). But the case cited by Plaintiff, *Scarves by Vera, Inc. v. United Merchants & Mfrs., Inc.*, 173 F. Supp. 625, 627 (S.D.N.Y. 1959), addressed the issue of actual copying, which is irrelevant to this motion. But "a defendant may legitimately avoid infringement by intentionally making sufficient changes in a work which would otherwise be regarded as substantially similar to that of the plaintiff's." *Warner Bros.*, 720 F.2d at 241 (quotation omitted); 4 *Nimmer on Copyright* § 13.03[B][1][b], at 13-70 (same). It is only the final draft of *Gentleman's Guide* that is relevant in assessing the issue of substantial similarity. *See, e.g., Flaherty v. Filardi*, No. 03 Civ. 2167(LTS)(HBP), 2009 WL 749570 (S.D.N.Y. March 20, 2009).

Plaintiff's efforts to suggest that access to *Kind Hearts* or earlier revisions are indicative of substantial similarity should be disregarded.

## C. The "Expert" Affidavit And Other Evidence Submitted By Plaintiff Is Improper, And Should Be Disregarded For Purposes Of This Motion

### 1. Expert Testimony is Inappropriate on the Issue of Substantial Similarity

In an effort to remedy legal deficiencies in its brief, Plaintiff relies on the affidavit of Dr. Michael Newton ("Newton Aff."), a purported expert on the "form, substance and artistic expression of [*Israel Rank and Kind Heart*]" (Newton Aff. ¶ 3), to argue that Alec Guinness's portraying multiple roles in the Film is copyrightable expression, and leads to protectible similarities between *Kind Hearts* and *Gentleman's Guide*. (*See, e.g.,* Pl. Br. at 8-9, 12, 15-16, 18). But the Second Circuit has long held that expert testimony is only permissible on the issue of "actual copying" (irrelevant here), and is inadmissible and irrelevant to establish protectible

5

substantial similarities between works:

> [T]he trier of the facts must determine whether the similarities are sufficient to prove *copying*. On this issue, analysis (dissection) is relevant, and the testimony of experts may be received.... If copying is established, then only does there arise the second issue, that of *illicit copying* (unlawful appropriation). On that issue ... the test is the response of the ordinary lay hearer; accordingly, on that issue, 'dissection' and expert testimony are irrelevant.

*Walker*, 784 F.2d at 51 (quoting *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946); *see also, e.g.*, *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 140 (2d Cir. 1992) (while expert opinion may be relevant to the issue of actual copying, it is irrelevant to the question of substantial similarity); *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930 (Hand, Learned) (in copyright cases, expert testimony "ought not to be allowed at all").[5]

In *Denker v. Uhry*, 820 F. Supp. 722 (S.D.N.Y. 1992), which is directly on point, the court refused to consider the "insightful analysis" offered by plaintiff's expert, the Chairman of the Department of Dramaturgy and Drama at the Yale School of Drama, because it was irrelevant to the issue of "substantial similarity."

> Although expert testimony may point out similarities that prove actual copying, copying has been conceded for the purposes of this motion. . . . [W]hen improper appropriation only is at issue, in works such as these, expert testimony, such as that introduced by plaintiff, is irrelevant.

*Id.* at 729. Accordingly, the Newton Affidavit is inadmissible concerning the issue of substantial similarity and must be disregarded.[6] It is the role of the Court, not of hired experts, to review the

---

[5] *See also, e.g.*, *Abend Revocable Trust*, 2010 WL 3701343, at *3 n.4 ("The opinions of experts or other third parties are irrelevant to a determination of substantial similarity."); *Branch v. Ogilvy & Mather, Inc.*, 765 F. Supp. 819, 824 (S.D.N.Y. 1990) (precluding use of expert testimony on issue of whether copying constitutes unlawful appropriation); *Davis v. United Artists, Inc.* 547 F. Supp. 722, 724 (S.D.N.Y. 1982) (refusing to consider expert testimony on issue of substantial similarity).

[6] Newton's affidavit is flawed in numerous other respects. For example, he opines that having multiple characters played by a single actor is not "merely an unprotectable 'idea'" (Newton Aff. ¶¶ 5-6) – a purely legal issue that is the province of this Court, not a literary "expert." *See, e.g.*, *United States v. Locascio*, 6 F.3d 924, 939 (2d Cir. 1993) (expert testimony may not usurp role of judge in

subject works and determine whether any legally cognizable substantial similarity exists.

### 2. Comments by Broadway Producers Are Irrelevant to Substantial Similarity

Similarly, Plaintiff cites to an April 21, 2009 email and a December 8, 2009 Playbill article to suggest that two Broadway producers referred to earlier versions of Defendants' work as "Kind Hearts." (Pl. Br. at 2-3, 5, 10, 15, 22; Garmise Aff. Exs. D, E). This is irrelevant. "[T]he opinions of third parties in secondary materials . . . cannot prove substantial similarity under the copyright laws . . . because the works themselves, not descriptions of them, are the real test for claims of infringement." *Crane v. Poetic Prods. Ltd.*, 593 F. Supp. 2d 585, 597 (S.D.N.Y. 2009) (quoting *Walker*, 784 F.2d at 51) (refusing to consider "articles or interviews by third parties who assumed that [counterclaim defendant's work] was based on [counterclaim plaintiff's work]" as irrelevant to substantial similarity inquiry); *see also, e.g., Abend Revocable Trust*, 2010 WL 3701343, at *3 n.4 ("The opinions of experts or other third parties are irrelevant to a determination of substantial similarity.") (emphasis added); *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 567 (C.D. Cal. 2005) (striking portions of complaint quoting industry commenters' comparisons of the subject works as "legally irrelevant to the issue of substantial similarity"); *Survivor Prods. v. Fox Broad. Co.*, No. CV01-3234 LGB (SHX), 2001 WL 35829267, at *3 (C.D. Cal. June 12, 2001) (same). Accordingly, the extrajudicial, third-party statements proffered by Plaintiff must be disregarded for purposes of determining substantial similarity.

These statements are also irrelevant because they were not based on the <u>current</u> version of *Gentleman's Guide*, which is dated <u>April 6, 2010</u> (Slotnick Decl. Ex. C).[7] *See, e.g.,* 4 *Nimmer on Copyright* § 13.03[B][1][b], at 13-70 ("Given the proposition that deliberate changes avoid

---

determining applicable law). Newton also impermissibly speculates regarding the impressions and memories of viewers of *Kind Hearts*, and their imagined reactions upon seeing *Gentleman's Guide*. (Newton Aff. ¶¶ 6, 13).

[7] References to "Slotnick Decl." are to the July 2, 2010 Declaration of Barry I. Slotnick.

infringement, courts 'have routinely rejected requests to consider earlier drafts of the screenplay.'") (quoting *Stromback v. New Line Cinema*, 384 F.3d 283, 299 (6th Cir. 2004); *Flaherty v. Filardi*, No. 03 Civ. 2167 (LTS)(HBP), 2007 WL 2734663, at *4 (S.D.N.Y. Sep. 19, 2007) ("[I]nterim drafts of a published non-infringing final work . . . are not actionable under the Copyright Act."). Moreover, it is hardly surprising that two producers might refer to Defendants' earlier work as "Kind Hearts" since, as Plaintiff admits, during the time the Agreement was in effect Defendants were shopping, with Plaintiff's permission, an authorized adaptation titled *Kind Hearts and Coronets*. (Pl. Br. at 4 n. 3).[8]

The question in this case is not whether selected individuals are confused by similarities in two works based upon the same public domain Novel. It is whether substantial similarities exist between the <u>protectible</u> elements of the works. Plaintiff's "evidence" is irrelevant to this issue.[9]

### D. The Concept Of One Actor Playing Multiple Roles Is Not Protectible, And Does Not Give Rise To A Claim Of Infringement

#### 1. Plaintiff Does Not, and Cannot, Cite Any Authority Refuting That This Common Theatrical Device is Not Protectible

Plaintiff cannot point to a single protectible similarity between their Film and the script for, or musical elements of, *Gentleman's Guide*, and instead base their infringement claims entirely on a contemplated casting decision. Plaintiff does not cite a single case suggesting that such a casting decision is copyrightable, and instead rely on Dr. Newton's inadmissible affidavit to elevate a common theatrical idea to protected expression. (Pl. Br. at 8-13). This does not suffice.

Ironically, Plaintiff accuses <u>Defendants</u> of "cit[ing] no case remotely similar to the facts of this case" (Pl. Br. at 13), but unlike Plaintiff, Defendants <u>have</u> cited cases, including *A Slice of Pie*

---

[8] It bears noting that Plaintiff's own exhibits reflect Broadway producers' raves about Defendants' work, which Plaintiff is trying to prevent ever seeing the light of day. (*See* Garmise Aff. Exs. D, E).

[9] "The case law . . . simply does not define 'substantial similarity' by reference to likelihood of customer confusion." *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 231 (S.D.N.Y. 2000).

*Prods., LLC v. Wayans Bros. Entm't*, 487 F. Supp. 2d 41 (D. Conn. 2007) and *Willis v. Home Box Office*, No. 00 Civ. 2500 (JSM), 2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001), *aff'd*, 57 Fed. App'x 902 (2d Cir. 2003) (Def. Br. at 19), holding that analogous theatrical conceits do not give rise to copyright liability.  The *Slice of Pie* court rejected claims of substantial similarity between two works, which used the unprotectible central idea of African-American FBI agents disguised as Caucasians.  487 F. Supp. 2d at 44-45, 48.  Plaintiff claims that this case is different because Defendants "took" the idea of an actor playing multiple roles from *Kind Hearts*.  (Pl. Br. at 13)  But in *Slice of Pie* both "access" and "actual copying" were assumed, obliterating Plaintiff's "distinction."  487 F. Supp. 2d at 47.  Plaintiff's effort to distinguish *Slice of Pie* by conclusorily asserting that it "cannot be equated to the centrality of a 'composite victim'" in the works in this case (Pl. Br. at 13) is also unavailing.  In *Slice of Pie*, the idea of the main characters, African-American FBI agents, disguising themselves as Caucasians was the central component of both works at issue, drove their plots, and is reflected in the titles to the works themselves – *Johnny Bronx* and *White Chicks*.  *See* 487 F. Supp. 2d at 44-45.  Plaintiffs suggestion that the idea at issue in *Slice of Pie* is less "central" or memorable than the "multiple role" concept – which is irrelevant to the plots and not apparent from the scripts – is frivolous.

Similarly, *Willis* held that the non-copyrightable dramatic devices of a character talking directly to the audience and celebrities appearing as themselves could not give rise to copyright infringement, <u>even if defendants copied these devices from plaintiff.</u>  *Id.* at *5 (Def. Br. at 19).  Plaintiff's attempt to distinguish the dramatic devices at issue in *Willis* (Pl. Br. at 18) lacks any support from the decision itself, and ignores that *Willis* turned on the uncopyrightable nature of these devices, not any lack of "significance" to the works.  2001 WL 1352916, at *5.

Plaintiff claims that copyright protection does not depend on "novelty" (Pl. Br. at 17-18) but misses the point that *Slice of Pie* and *Willis* turned not on lack of novelty, but on the determination

that analogous dramatic devices in question were unprotectible ideas:

> Here . . . most of the similarities evident from a comparison between the *Johnny Bronx* screenplay and the *White Chicks* film arise from uncopyrightable elements and concepts, including ideas (which are noncopyrightable) that had been used prior to the creation of either work and *scenes a faire*.

*Slice of Pie*, 487 F. Supp. 2d at 48; *see also Willis*, 2001 WL 1352916, at *5 ("Even if we accept [plaintiff's] assumption that [defendants] copied all of the similar ideas that may be found in the two works, Plaintiff cannot prevail.").

The decision to have one actor perform multiple roles is no more amenable to copyright protection than the unprotectible conceits in *Slice of Pie* and *Willis*. Indeed, unlike those dramatic devices, casting a single actor for multiple roles is not a plot element, and is not even part of the *Gentleman's Guide* script. Rather, it is best understood as an aspect of performance, or of "stage business" which courts have recognized is not copyrightable. *See, e.g., Chappell & Co. v. Fields*, 210 F. 864, (2d Cir. 1914) ("[T]he voice, motions, and postures of actors and mere stage business" are not copyrightable); *Harold Lloyd Corp. v. Witwer*, 65 F.2d 1, 22 (9th Cir. 1933) ("The dramatic and moving picture rights of a copyrighted story do not cover words, voice, motions or postures of actors, but an original novel treatment of a theme.") (citations omitted); *Supreme Records, Inc. v. Decca Records, Inc.*, 90 F. Supp. 904, 909 (S.D. Cal. 1950) ("There is a line of cases which holds that what we may call generically by the French word representation,- which means to perform, act, impersonate, characterize, and is broader than the corresponding English word,- is not copyrightable . . . ."); *Seltzer v. Sunbrock*, 22 F. Supp. 621, 630 (S.D. Cal. 1938) (stage devices which made production more entertaining to the audience could not be copyrighted); *Rush v. Oursler*, 39 F.2d 468, 472-73 (S.D.N.Y. 1930) ("The interruption of a stage performance by a murder in a crowded theater of a person seated in the audience is a dramatic incident which per se is not copyrightable, and no one could by obtaining a copyright withdraw from others the right to portray such an occurrence in literary or dramatic form."). Indeed, the efficacy of this device derives entirely from

10

the quality of the performance itself.  It does not diminish the quality or memorableness of Alec Guinness's performance in *Kind Hearts* to note that the concept underlying it is simply not copyrightable, and Plaintiffs have not cited a single case to the contrary.

### 2. Plaintiffs' Conclusory Assertions Concerning the "Centrality" of This Unprotectible Theatrical Device Are Irrelevant

Plaintiff repeatedly, and conclusorily, refers to the "centrality" to *Kind Hearts* of Alec Guinness portraying multiple roles (Pl. Br. at 2, 5, 9, 11-14, 16, 19, 21), but such "centrality" does not render an idea copyrightable.  In *Slice of Pie* the same central idea drove the plots of and was reflected in the titles of both works, yet this "centrality" did not render the underlying idea copyrightable. (*Supra* at 8). *See also, e.g., Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) (underlying concept of "dinosaur zoo" not copyrightable); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91-92 ("thematic concept that to a lost child, the familiar face of the mother is the most beautiful face" not copyrightable); *Hogan*, 48 F. Supp. 2d at 300, 311 (no substantial similarity despite both works sharing unprotectible underlying idea of half-human, half-vampire named Nicholas Gaunt on quest to discover his origins); *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010) (no substantial similarity between two works, each titled *The Last Samurai*, which "share the historically unfounded premise of an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising").

Further, a simple viewing of *Kind Hearts* demonstrates that its central aspect is not a casting decision but rather the portrayal, taken from *Israel Rank*, of a distant relative to a noble family murdering his way up the chain of succession.  *See Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 434 (S.D.N.Y. 1985), *aff'd*, 784 F.2d 44 (2d Cir. 1986) ("In determining copyright infringement, the works themselves supersede and control contrary allegations and conclusions, or

11

descriptions of the works as contained in the pleadings.").[10]   Plaintiffs further overstate the

significance of the "one actor" conceit by suggesting that it is solely responsible for the comedic

nature of the Film, and that Defendants seek to turn *Israel Rank* into a comedy through the same

means.   (Pl. Br. at 2, 5).   First, *Israel Rank* is a black comedy, Plaintiff's inapt description to the

contrary.   (Def. Br. at 15-16).   Second, Plaintiff's overreaching claim that the comedic nature of the

works at issue owes entirely to the "one-actor" conceit is frivolous.   In fact, that *Gentleman's Guide*

is a broad comedy is immediately apparent from a review of the script and musical elements of the

play, in which the concept that one actor will portray multiple roles is nowhere mentioned.

### 3. Plaintiff Ignores That, in Assessing Substantial Similarity, the Court Must Remove Non-Protectible Elements From Consideration

Plaintiff does not assert a single purportedly protectible similarity between the works at

issue (beyond the idea of one actor playing multiple roles), but, at various points in its brief,

Plaintiff nevertheless attempts to utilize the unprotectible similarities between the works to buttress

its claims.   This effort must fail.

Plaintiff cites the wrong test for determining "substantial similarity", *i.e.* "whether an

average lay observer would recognize the alleged copy as having been appropriated from the

copyrighted work."   (Pl. Br. at 14) (quoting *Ideal Toy Corp. v. Fab-Lu Ltd.*, 360 F.2d 1021, 1022

(2d Cir. 1966).   However, where, as here, a plaintiff's work contains both protectible and

unprotectible elements, the court must "apply a 'more discerning observer' test, which requires

substantial similarity between those elements, and only those elements, that provide copyrightability

to the allegedly infringed [work]."   *Lapine v. Seinfeld*, 375 Fed. Appx. 81, 83 (2d Cir. 2010).   A

court applying the "more discerning observer" test "must attempt to extract the unprotectable

_____

[10] While, as set forth *supra*, Newton's affidavit is inadmissible and cannot substitute for the Court's own review of the subject works, it bears noting that this purportedly "principal artistic expression" of *Kind Hearts* (Newton Aff. ¶ 11) is only even mentioned, often in passing, in five pages of Newton's 79-page book on the Film.   *See* Michael Newton, *Kind Hearts and Coronets*, at 9, 54-56, 59 (2003).

elements from [the] consideration and ask whether the *protectible elements, standing alone*, are substantially similar." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir. 1995); (Def. Br. at 10 n.6). Plaintiff's claim that the "average lay observer" test applies here is simply wrong.

Plaintiff also claims that the "total concept and feel" of the two works viewed "as a whole," with the concept of one actor playing multiple roles "bound together in an inseparable unity with all of the film's other elements," are substantially similar. (Pl. Br. at 21). Again, because these "other elements" are unprotectible, they cannot give rise to copyright infringement. Courts in this Circuit are mindful that "accepting an overly broad scope for protectible concept and feel threatens the basic principle of copyright law:  that concepts and ideas may not be copyrighted," and "a court conducting a substantial similarity analysis should engage in 'a careful assessment of the total concept and feel of the works at issue, <u>after the non-protectible elements have been eliminated from consideration.</u>" (Def. Br. at 21-22) (quoting *Lewinson v. Henry Holt and Co.*, 659 F. Supp. 2d 547, 576 (S.D.N.Y. 2009) and *Psihoyos v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 268, 274 (S.D.N.Y. 2005)).

Plaintiff similarly asserts that "comprehensive nonliteral similarity" exists between the works, but that concept, which applies "where the fundamental essence or structure of one work is duplicated in another," 4 Nimmer, *Nimmer on Copyright* § 13.03[A][1] at 13-38 (2009), is inapposite here.  The shared concept of one actor playing multiple roles – the only purported "similarity" identified by Plaintiffs – does not remotely establish "comprehensive" similarity in the "pattern or sequence of the two works." *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1073 (2d Cir. 1992).  And again, any "structural" similarities arising from the fact that both works are derived from the same public domain Novel are irrelevant:

> Even when extended similarity exists between [the works] when taken as a whole . . . [t]o the extent that such similarity inheres in ideas, which are by definition unprotected, or in expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's *prima facie* case.

4 Nimmer, *Nimmer on Copyright* § 13.03 [B][2], at 13-73; *see also Walker*, 784 F.2d at 48-49

(rejecting claim of comprehensive non-literal similarity based on nonprotectible elements).[11]

## II. PLAINTIFF'S BREACH OF CONTRACT CLAIM MUST ALSO BE DISMISSED

### A. Plaintiff Concedes that the Agreement Does Not Restrict Defendants From Using Noncopyrightable Material That is Also Contained in *Kind Hearts*

The plain language Agreement between the parties does not restrict Defendants from using

noncopyrightable material. (Def. Br. at 29-32). Plaintiff does not dispute this, but rather says that it

is "irrelevant" because Defendants have purportedly infringed Plaintiff's "protectible interest in the

Film." (Pl. Br. at 23). Accordingly, if Plaintiff's copyright infringement claim is dismissed, its

breach of contract claim must be dismissed for the same reasons.

### B. Plaintiff's Breach of Contract Claim is Preempted by the Copyright Act

Numerous courts within this Circuit have held that a breach of contract claim is preempted

where it alleges a violation of one of the exclusive rights of copyright law, and does not include an

---

[11] It is impossible, in the limited space available, to fully set forth the extent to which Plaintiff has mischaracterized cases throughout its brief. By way of example, however, Plaintiff cites *Burgess v. Chase-Riboud*, 765 F. Supp. 233 (E.D. Pa. 1991) in support of its "comprehensive non-literal similarity" argument, claiming that the court "found substantial similarity based on the device of a dream sequence." (Pl. Br. at 16). In fact, the court found similarity based on the "sheer number of similarities in the fictional details" of the two works, only one of which was that both works involved a climactic scene in which Sally Hemmings had a nightmare of Thomas Jefferson being sold at a slave auction. 765 F. Supp. at 239, 241. Infringement was not found based on this one similarity, and the similarity in expression went far beyond use of a "device of a dream sequence." Similarly, in *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49 (2d Cir. 1936) (Pl. Br. at 16), the finding of substantial similarity was based on the Court's finding of defendant's wholesale copying of plaintiff's protectible sequence and plot, *id.* at 55, which does not exist here.

Plaintiff also claims that in *Burroughs v. Metro-Goldwyn-Mayer, Inc.*, 683 F.2d 610, 629-30 (2d Cir. 1982), "substantial similarity" was found despite alleged differences between the works. In fact, the cited portion of *Burroughs* did not concern an infringement claim at all, but rather assessed whether a film complied with a contractual agreement which required that it be "based substantially upon the same story" as an earlier film. 683 F.2d at 628. In finding that the film was based "substantially upon the same story," the court was not concluding that infringement existed, but rather that the defendant had complied with its contractual obligations! *Id.* at 631. This is merely indicative of how Plaintiff mischaracterizes cases in an effort to disguise the lack of any authority supporting its position.

14

"extra element" making it qualitatively different from a copyright claim.  (Def. Br. at 27-28).  Here, Plaintiff's Complaint alleges only that Defendants have breached the Agreement between the parties "[b]y continuing to ready their musical for commercial production."  (Compl. ¶ 23).  There is no added element beyond those which, if proven, would constitute copyright infringement. Therefore Plaintiff's breach of contract claim is preempted.  (Def. Br. at 28).

Plaintiff cites *Sharp v. Patterson*, 2004 WL 2480426 (S.D.N.Y. Nov. 3, 2004) for the proposition that a contract claim is not preempted if it "is based on allegations that the parties' contract creates a right not existing under copyright law . . . and the plaintiff is suing to protect that contractual right".  (Pl. Br. at 23) (emphasis added).  But Plaintiff is not "suing to protect" any right not existing under copyright law.  Similarly, Plaintiff cites a litany of "covenants" purportedly found in agreements between the parties, such as exclusivity provisions and limitations on assignment, that allegedly "go beyond copyright protection.  But Plaintiff is not suing to protect any of those rights.  Plaintiff is only suing to enforce a contractual provision restricting Defendants from continuing to deal in materials which "incorporate or embody the Film" (Compl. ¶ 23).  Because the right Plaintiff seeks to enforce does not "go beyond copyright protection," its claim is preempted.

Finally, Plaintiff cites *Banxcorp v. Costco Wholesale Corp.*, 2010 WL 2802153 (S.D.N.Y. Jul. 14, 2010) for the proposition that "the promise itself" is an extra element that saves a contract claim from preemption.  (Pl. Br. at 24).  However, this holding is inconsistent with numerous Southern District cases.  (Def. Br. at 28).  In any event, if there is no other element beyond a "promise" distinguishing Plaintiff's contract claim from its copyright claim, then the two claims are duplicative, and if the copyright claim is dismissed, the contract claim must be dismissed as well.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety.

Dated: New York, New York
          November 1, 2010

LOEB & LOEB LLP

By:
          Barry I. Slotnick (BS-9796)
          Jonathan Neil Strauss (JS-1090)
          Shelly Elimelekh (SE-0597)
          345 Park Avenue
          New York, New York 10154-1895
          (212) 407-4000

*Attorneys for Defendants*

16